# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 10, 2015 Session

## JAMES R. STERCHI, JR. v. LOUIS B. SAVARD, JR., AS EXECUTOR OF THE ESTATE OF L. BASIL SAVARD, SR.

### Appeal from the Circuit Court for Bradley County
No. V12500     Don R. Ash, Senior Judge

_____

### No. E2015-00928-COA-R3-CV-FILED-MARCH 11, 2016

_____

This appeal concerns a conflict of law choice between Tennessee and Florida law. James R. Sterchi, Jr. ("Mr. Sterchi") sued L. Basil Savard ("Mr. Savard") in the Circuit Court for Bradley County ("the Trial Court") for the wrongful death of Mr. Sterchi's mother Rosalind Savard ("Mrs. Savard") in a car accident in Florida.[1] Mr. Savard filed a motion for summary judgment. Florida law prevents Mr. Sterchi from pursuing his claim while Tennessee law does not. All interested parties were domiciled in Tennessee. The Trial Court held that Florida law applies and granted Mr. Savard's motion for summary judgment. Mr. Sterchi filed an appeal to this Court. We hold that under "the most significant relationship" test as adopted by our Supreme Court in *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992), Tennessee has the more significant relationship to the occurrence and parties in this case, and, therefore, Tennessee substantive law applies to Mr. Sterchi's wrongful death action. We reverse the judgment of the Trial Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, joined, and THOMAS R. FRIERSON, II, JJ., concurred with a separate concurring opinion.

Ronald J. Berke, Jeremy M. Cothern, and Charles A. Flynn, Chattanooga, Tennessee, for the appellant, James R. Sterchi, Jr.

---

[1] Mr. Savard died of natural causes on December 18, 2014. Louis B. Savard, Jr. ("Executor"), Mr. Sterchi's half-brother and the son of Mr. and Mrs. Savard, later was substituted as executor of Mr. Savard's estate.

Denise VanNess (Florida counsel), Crystal River, Florida, for the appellant, James R. Sterchi, Jr.

Richard W. Bethea and John H. Lawrence, Chattanooga, Tennessee, for the appellee, Louis B. Savard, Jr., as Executor of the Estate of L. Basil Savard, Sr.

# OPINION

## Background

The material background facts of this case are uncontested and brief. Mr. Sterchi is the adult son of Mrs. Savard. Executor is the son of Mrs. Savard and Mr. Savard, and thus is Mr. Sterchi's half-brother. This case has its origins in a 2012 car accident that, tragically, left Mrs. Savard dead.

Mr. Sterchi was born in Tennessee and has been a resident and domiciliary of the state for most of his life. Mr. and Mrs. Savard, married in the 1960s, lived in Tennessee for a total of at least thirty years. The Savards moved to Florida in the 1980s. In 2005 or 2006, the Savards moved back to Tennessee. In late 2011, the Savards went on what was intended to be an extended vacation in Florida of perhaps up to 30 days in length. On the morning of January 1, 2012, the Savards attended church in Stanford, Florida. Following church, the Savards had lunch with friends at a restaurant. After lunch, the Savards began the trip back to their rented condominium. Mr. Savard drove. At one point, Mr. Savard lost control of the vehicle and crashed into a utility pole. Mr. Savard sustained injuries in the crash but survived. Unfortunately, Mrs. Savard died from her injuries sustained in the wreck.

In June 2012, Mr. Sterchi sued Mr. Savard in the Trial Court for the wrongful death of his mother, Mrs. Savard. More procedural history not relevant to the issues on appeal followed.[2] At issue below, and now on appeal, was which state's law applies. Under Tennessee law, an heir may bring a wrongful death suit in his or her own name. In Florida, only the personal representative of the decedent may bring suit. Tennessee also allows recovery for adult children based on loss of consortium, whereas Florida does not when a spouse survives the decedent. In December 2014, Mr. Savard filed a motion for summary judgment. The Trial Court undertook a "most significant relationship" analysis and determined that Florida law governed the action. In March 2015, the Trial Court entered an order granting Mr. Savard's motion for summary judgment. Mr. Sterchi timely appealed to this Court.

---

[2] This Court declined Mr. Savard's request for an interlocutory appeal.

## Discussion

We restate and consolidate the issues raised by the parties on appeal as one dispositive issue: whether Tennessee or Florida law governs Mr. Sterchi's wrongful death action arising out of the Savards' accident in Florida.

With regard to summary judgments, our Supreme Court explained in *Rye v. Women's Care Center of Memphis, MPLLC*:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).
>
> ***
>
> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the

manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] ... supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Center of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015) (italics in original).

In the present case, we are presented with an apparent conflict of laws. Under Tennessee law, Mr. Sterchi, as the adult child of the decedent, may pursue his wrongful death claim. Tenn. Code Ann. §§ 20-5-106 and 20-5-107(d) (Supp. 2015) (the latter stating "[n]othing in this section shall be construed to prevent the institution of an action by a child with respect to the death of a parent." Under Florida law, however, there is no basis for an independent right to bring suit. There, only the personal representative may bring suit. Fla. Stat. Ann. § 768.20; *See Florida Emergency Physicians-Kang & Associates, M.D., P.A. v. Parker*, 800 So.2d 631, 633 (Fla. Dist. Ct. App. 2001). Executor suggests that Mr. Sterchi simply could have acted with more alacrity to be named the administrator in order to bring the suit in compliance with Florida law. Mr. Sterchi argues in response that, under Tenn. Code Ann. § 35-15-706, he likely would had to have proven malfeasance in order to replace the administrator, and that his half-brother never would have agreed to sue his own father as evidenced by this lawsuit. In our judgment, the difference amounts to a conflict of laws.

Having concluded that a conflict of laws exists, we now must decide which state's law—Florida's or Tennessee's—applies. In 1992, our Supreme Court repudiated the rigid, old *lex loci*—or law of the place—doctrine and instead adopted a balancing test based on a state's more significant relationship. Our Supreme Court articulated the test courts are to apply in conflicts of law scenarios as follows:

Given the difference between comparative fault in Arkansas and contributory negligence in Tennessee, as well as the difference between the wrongful death statutes, we conclude that there is a conflict between Arkansas and Tennessee law which is a necessary predicate to deciding which state's law should govern this wrongful death action.

\*\*\*

We agree with the great majority of other jurisdictions that the doctrine of *lex loci* is outmoded because of changes in society, causing a consequential development of modern law. The *lex loci* doctrine had its conceptual foundation in the common-law vested rights doctrine, which was founded on respect for a state's territorial sanctity. *See Traveler's Indemnity Co. v. Lake*, 594 A.2d 38 (Del. 1991), *Winters, supra*, 481 S.W.2d at 756. We observe that in today's modern industrial world, the vested rights theory, with its emphasis on territorial boundaries, has little relevance. "State and national boundaries are of less significance today by reason of the increased mobility of our population and of the increasing tendency of men to conduct their affairs across boundary lines." *Restatement (Second) of Conflicts of Law*, ch. 7 at 413 (1971) (Introductory Note). *See also Gutierrez v. Collins*, 583 S.W.2d at 317 (Tex. 1979).

\*\*\*

Accordingly, we adopt the "most significant relationship" approach of §§ 6, 145, 146, and 175 of the *Restatement (Second) of Conflict of Laws* (1971), which provides:

### § 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

## § 146. Personal Injuries

In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

## § 175. Right of Action for Death

In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

The rule we adopt today shall be applied to (1) all cases tried or retried after the date of this opinion, and (2) all cases on appeal in which the conflicts of law issue was raised on a timely basis in the litigation.

Having adopted the "most significant relationship" approach of the *Restatement (Second)*, we return to the facts of this case to determine whether Arkansas or Tennessee law should be applied.

The only contact the parties had with the State of Arkansas was that the injury occurred in that state. Both the decedent and the defendant were life-long residents of Tennessee and neither owned any property in Arkansas. The parties' relationship was centered in Tennessee because the relationship was formed and continued as a result of the decedent's participation in the scuba class taught at Memphis State by the defendant. We think the fact that the injury occurred in Arkansas was merely a fortuitous circumstance, and that the State of Arkansas has no interest in applying its laws to this dispute between Tennessee residents. Under the facts here presented, we conclude that although the injury occurred in Arkansas, the State of Tennessee has a more significant relationship to the occurrence and the parties under the factors and contacts set out in §§ 6 and 145 of *Restatement (Second)*.

Accordingly, the Court of Appeals is reversed, and this case is remanded to the trial court with instructions that the law of Tennessee should be applied to the plaintiffs' claims for wrongful death. The costs of this appeal are taxed to the defendant-appellee.

*Hataway*, 830 S.W.2d at 55, 57, 59-60. (Footnotes omitted).

Mr. Sterchi argues that this case is a straightforward application of *Hataway*. In other words, all of the interested parties were domiciled in Tennessee, and, while the car accident that killed Mrs. Savard fortuitously – in other words, by chance - happened to occur in Florida, Tennessee has the more significant relationship to the occurrence and parties. Executor argues that the present case is distinguishable from *Hataway*. Primarily, Executor points to the fact that the Savards were in Florida for an extended vacation, not merely a quick diving expedition as in *Hataway*. Executor also posits a difference in public policy interest ramifications between accidents on Florida's roads as opposed to the death, however regrettable, of someone in a scuba diving class.

Under *Hataway*, there is a rebuttable presumption in wrongful death cases that the law of the place of the injury applies. This would favor Florida in the present case. Next we consider the contacts from the Second Restatement. The injury and the conduct causing the injury obviously occurred in Florida, and these contacts favor Florida. The Savard family was domiciled in Tennessee, and the center of the Savards'

relationship—their marriage—was based in Tennessee, contacts which naturally favor Tennessee.

Mr. Sterchi takes the position that Florida has zero interest in a wrongful death lawsuit between Tennessee residents. We disagree with this broad statement. Florida has an interest in maintaining the safety of its roads. The question, however, is not zero-sum. While both Tennessee and Florida have interests here, the decisive issue is which state has the more significant relationship.

In our judgment, Mr. Sterchi has demonstrated that Tennessee has the more significant relationship to the occurrence and the parties and, therefore, the presumption that the law of the place of the injury must be applied is successfully rebutted. This case is analogous to *Hataway*, which controls. Although the Savards intended to stay in Florida for an extended vacation, their excursion in Florida still was temporary even though deliberate. They remained domiciled in Tennessee. In *Hataway*, the student trip to Arkansas was brief, but also deliberate. The scuba class was not held in Arkansas by happenstance but deliberately so. In both *Hataway* and the present case, the parties intentionally left their place of domicile to travel temporarily to destinations in other jurisdictions where the tragic accidents occurred.

In *Lemons v. Cloer*, 206 S.W.3d 60 (Tenn. Ct. App. 2006), a bus and train collided in Tennessee just north of the Georgia state line. That opinion, as relevant here, reads:

In the instant case, all of the children on the bus were residents of Georgia. The bus driver was also a resident of Georgia. The School District is a Georgia governmental entity. The School District's relationships with the plaintiffs were clearly centered in Georgia. This was a Georgia bus picking up children living in Georgia and transporting them to a Georgia school. The contacts with Tennessee are the following: the accident occurred in Tennessee; Tennessee emergency and medical personnel responded to the accident; injured parties were taken to Tennessee hospitals; and the train engineer and conductor, who also filed personal injury claims in the trial court, were residents of Tennessee. When all of this is considered, we conclude that Georgia had a "more significant relationship" to the parties and events at issue. *See* Restatement (Second) of Conflict of Laws § 145(2). This is not to say that Tennessee did not have a relationship to the parties and this school bus/freight train collision; but, in our judgment, Tennessee's relationship is less significant than that of Georgia.

*Lemons*, 206 S.W.3d at 67.

        *Lemons* stands for the proposition that both states in a conflict of laws scenario may have interests in the matter, but one state's interests may outweigh the other state's interests.  In the present case, both Tennessee and Florida have interests or contacts.  Tennessee has an interest in a wrongful death lawsuit between its domiciles. Florida has an interest in preserving safety on its roads.  Applying the binding precedent of *Hataway* as we must, we conclude that Tennessee's interest and relationship is greater.

        We hold that Tennessee substantive law applies to this case, and that the Trial Court erred in granting summary judgment to Executor.  We reverse and remand this case for further proceedings before the Trial Court.

### Conclusion

        The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below.  The costs on appeal are assessed against the Appellee, Louis B. Savard, Jr., as Executor of the Estate of L. Basil Savard, Sr.


_____
D. MICHAEL SWINEY, CHIEF JUDGE